UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORA UDELL,

       Plaintiff,                                 Hon. Gordon J. Quist

v.                                                      Case No. 1:08-CV-1108

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 33 years of age at the time of the ALJ's decision.  (Tr. 21, 23).  She successfully completed high school, as well as several semesters of college, and worked previously as a production assembler.  (Tr. 98-102, 277).

Plaintiff applied for benefits on November 17, 2004, alleging that she had been disabled since February 9, 2004, due to "back trouble."  (Tr. 64-66, 71, 245-50).  Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 24-63, 235-44).  On May 9, 2007, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, David Holwerda. (Tr. 273-98).  In a written decision dated August 13, 2007, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act.  (Tr. 15-23). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 3-6).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**RELEVANT MEDICAL HISTORY**

On April 17, 2004, Plaintiff participated in an MRI examination, the results of which revealed a disk extrusion at L5-S1 "causing marked compression of the left S1 nerve root." (Tr. 135). The examination was otherwise unremarkable. (Tr. 135). On May 18, 2004, Plaintiff underwent microdiscectomy surgery, performed by Dr. Christopher Marquart. (Tr. 130-31).

On June 23, 2004, Plaintiff reported that she was "doing better" and that the "horrible pain that she had prior to surgery" was "gone." (Tr. 153). Plaintiff was instructed to participate in physical therapy. (Tr. 153). On July 21, 2004, Plaintiff reported that she was experiencing pain in her left lower extremity. (Tr. 152). She also reported that physical therapy was not helping. (Tr. 152). Physical therapy treatment notes, however, indicate that Plaintiff participated in physical therapy from July 1, 2004, through July 30, 2004, during which time her reported pain level decreased from 8/10 to 5/10. (Tr. 142-45).

On August 3, 2004, Plaintiff was examined by Dr. Marquart. (Tr. 150). Plaintiff reported that she was experiencing pain in her lower extremities. (Tr. 150). Straight leg raising was positive, but the doctor discerned "no obvious neurologic deficits." (Tr. 150). The results of an MRI examination revealed "postop changes and scarring," but "no appearance of recurrent disc." (Tr. 149). Dr. Marquart recommended that Plaintiff undergo a nerve block procedure. (Tr. 150). Plaintiff refused this recommendation. (Tr. 146).

On August 26, 2004, Plaintiff exhibited "good" strength and no evidence of sensory impairment. (Tr. 146). Plaintiff reported that her pain had improved with medication. (Tr. 146).

On December 17, 2004, Plaintiff completed a report concerning her activities. (Tr. 90-97). Plaintiff reported that after helping her children get ready for school in the morning, she

4

prepares breakfast, cleans the house, and folds laundry. (Tr. 90-92). She reported that she also prepares meals, goes outside to watch her children, goes shopping, visits with others, and helps her children with their homework. (Tr. 92-97). Plaintiff reported that she can lift ten pounds and walk one-eighth of a mile. (Tr. 95).

On January 20, 2005, Plaintiff reported that she was experiencing a "stiff aching feeling in her back." (Tr. 227). She also reported that she was had not been taking her medication "for a period of time." (Tr. 227). A physician's assistant offered Plaintiff treatment with injection therapy and spinal cord stimulation, both of which Plaintiff refused. (Tr. 227). Plaintiff reported that "she does not wish to pursue any further treatment or therapy." (Tr. 227).

On August 9, 2006, Plaintiff participated in an MRI examination of her lumbar spine, the results of which revealed "a small recurrent herniation of the L5-S1 disc." (Tr. 231-32). On September 26, 2006, Plaintiff participated in an MRI examination of her cervical spine, the results of which revealed "very mild" degenerative changes at C5-6, with "no disc herniation or significant spinal canal stenosis." (Tr. 229-30). An MRI of Plaintiff's brain, performed the same day, was "negative." (Tr. 228).

On September 28, 2006, Plaintiff participated in an electromyography and nerve conduction examination, the results of which revealed "no evidence of recurrent radiculopathy or residual radiculopathy at L5-S1." (Tr. 233).

At the administrative hearing, Plaintiff testified that she can "probably" walk "half a block," but cannot lift any weight. (Tr. 288-89). Plaintiff reported that she cannot sit for long periods of time, but must instead alternate between sitting and standing/walking. (Tr. 288). Plaintiff reported that she experiences difficulty sleeping due to "leg spasms" and "throbbing." (Tr. 291).

5

# ANALYSIS OF THE ALJ'S DECISION

## A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

## B. The ALJ's Decision

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) back pain with radiculopathy, (2) degenerative disc disease, and (3) obesity. (Tr. 18). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ concluded that while Plaintiff was

---

[1]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 18-23). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) she can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) she can stand and/or walk six hours during an 8-hour workday; and (3) requires a sit/stand option. (Tr. 18). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert David Holwerda.

The vocational expert testified that there existed approximately 10,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 293-95). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988). The vocational expert further testified that if Plaintiff were only able to stand for two hours during an 8-hour workday, there still existed approximately 5,000 jobs which she could perform. (Tr. 295-96).

8

a. The ALJ Properly Evaluated Plaintiff's Impairments

As noted above, the ALJ determined that Plaintiff suffered from the following severe impairments: (1) back pain with radiculopathy, (2) degenerative disc disease, and (3) obesity. Plaintiff asserts that the ALJ's conclusion in this regard is in error. However, Plaintiff has failed to identify the additional impairment(s) from which she allegedly suffers.

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); *see also*, *Despins v. Commissioner of Social Security*, 257 Fed. Appx. 923, 929 n.2 (6th Cir., Dec. 14, 2007).

An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988)); *see also*, *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146, 151 (6th Cir. 1986) (an impairment is less than severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience").

Plaintiff has failed to identify, and the record does not indicate, that Plaintiff suffers from any severe impairments beyond those identified by the ALJ. I find, therefore, that the ALJ's determination on this issue is supported by substantial evidence. However, even if the ALJ's conclusion is not sufficiently supported by the evidence, the result is the same.

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir., Feb. 22, 2008) (citing *Maziarz*, 837 F.2d at 244); *Fisk v. Astrue*, 253 Fed. Appx. 580, 583-84 (6th Cir., Nov. 9, 2007) (same).

Here, the ALJ determined that Plaintiff suffered from a severe impairment at step two of the sequential analysis and continued with the remaining steps thereof, considering in detail the medical evidence of record. Thus, even if I assume that the ALJ erred in failing to find that Plaintiff suffered from a severe impairment other than those identified by the ALJ, such does not call into question the substantiality of the evidence supporting the ALJ's decision. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep.

16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

      b. The ALJ Properly Evaluated the Medical Record

Plaintiff next asserts that the ALJ "relied on an undated, unsigned RFC (T - 178-185) and wrongly determined that it was by a non-examining physician." Again, Plaintiff has completely failed to articulate the basis this particular "claim" or provide *any* analysis in support thereof. The portion of the record to which Plaintiff cites is a Physical Residual Functional Capacity Assessment. (Tr. 178-85). This assessment is completed, but is neither signed nor dated. The conclusion of this particular assessment is that Plaintiff can perform work activities consistent with the ALJ's RFC determination. Plaintiff's assertion notwithstanding, the ALJ makes no mention of this assessment in his decision denying Plaintiff's claims for benefits. I find this issue, therefore, to be without merit.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: October 30, 2009
/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge